Morning, Your Honors. My name is David Raisman of Bryan Cave, LLP. I'm here for Dillards Store Services, Inc. and Dillards, Inc. I'd like to reserve three minutes for rebuttal as time allows. I'm also going to accept the court's invitation to take up the Negrempa issue because we do agree, Dillards does agree, that that presents the important threshold issue for this court of whether the court or the arbitrator should decide issues of unconscionability. As time and colloquy about Negrempa allows, I would, however, like to address the merits, so to speak, of the appeal, and that would address the issue that disagreement is not unconscionable, as it meets all five of the Armendaris factors. And even if the single provision that excludes claims for injunctive relief to prevent unfair competition is unconscionable, this is an overwhelmingly fair and balanced contract. It is not permeated by unconscionability or an illegal purpose. Before you get launched too much into the substantive part, why is it that the record doesn't demonstrate that Dillards waived the arbitration provision? Why is it that it doesn't, it didn't waive it? Because there is no showing of prejudice. Oh, the fact that she paid the money, she got it back, she's delayed, she had to go to court, and then Dillards walks in and says, aha, now we want to live up to this agreement that we wrote that we've refused to acknowledge up to now. Why isn't that prejudice? Just so the record's clear, there were different claims for arbitration, if you will, that were presented on the two occasions. But even putting that issue aside, the plaintiff has failed to show prejudice. This issue was fully briefed to the district court. The district court declined to reach the waiver issue. And for some of the issues on the threshold questions, I don't think it's appropriate for the district court to do it. But had it reviewed it, and what was argued essentially was that they didn't show the sufficient showing of prejudice. From Moses Cohn on, all the Federal courts have made clear that a waiver argument is going to be highly disfavored, that there's a heavy burden of proof on the party trying to present waiver to demonstrate that waiver happened, that all doubt should be in favor of arbitration. And the pronouncements and the platitudes that we can announce go on from there. Does the test change if we inquire not whether you waived, but rather whether you repudiated the contract? I think there's cases, and we cited them in our reply brief, that say that these waiver arguments, I'm sorry, the breach arguments, which also were not addressed by the district court, are really just a recapitulation of the waiver issues. So your argument is, your response to me is, no matter what I call it, waiver, repudiation, or breach, nonetheless, it's highly disfavored. And the argument is you just made all apply in equal force? Under the FAA, that is in fact the case. There's also explicitly a remedy under the FAA for an alleged breach or repudiation of the contract. And Section 4 says, go to court and compel the arbitration. That's not what happened here. But there's lots of other law, and we cite some of it in our brief, that talk about that issue. Again, the district court did not reach this issue. I don't believe the record supports the showing of the breach. While I will concede for the Court that those are live issues and could be considered, I don't think they've been properly presented here. I understand that the district court did not reach this. But why doesn't the record support a finding that you – now, waiver is a legal conclusion. I want to see what's in the record here in terms of what your client did or didn't do. Your client appears to have refused to arbitrate. Is that correct? The client refused to arbitrate the plaintiff and appellee's initial demand for arbitration. Did they ever demand arbitration? Well, they submitted a form essentially that said we'd like to arbitrate. That's how the process works. They sent it in to Dillard's legal firm. Well, but I guess I'm after the negative pregnant from the word initial. Did they – was there some other demand to arbitrate that you did acquiesce to? No, Your Honor, but there is – So any demand for arbitration you refused to acquiesce to? The initial one was refused, Your Honor. And were there any others? There were no others. Okay. So the only demand for arbitration you refused to arbitrate? Right. I guess what I meant to say was the only statement of the claims was one that Dillard's refused to arbitrate. And so there was – and there was never – Sorry, the first statement of the claim. And the first time that you decided you'd like to arbitrate is when she – after she brought suit? That's correct. Yeah. Okay. Your Honor, the reason that the waiver is not supported by the record, because we contested some of these issues below. Contested which? Contested which issues? Not those questions that the Court has just presented, but other issues regarding waiver. What other issues? Well, for example, issues of whether the claim for arbitration that was made or the presentation of the claim for arbitration that was presented was covered by the arbitration agreement. The Court notes, I believe, in its opinion that Dillard said something about that, but doesn't – again, doesn't reach the issue. Help me understand what part of her claim wasn't covered by the arbitration agreement. You're now claiming that it is, right? I don't believe – to my knowledge, Your Honor, I apologize if Apelli has put this into the record that's here before the Court, but I haven't seen it in a long time. But I do not believe as part of this record is of Ms. Brown's, the Apelli's, initial claim or demand for arbitration that was submitted to Dillard's. That's the document on which Dillard's made a decision that we can all question, but has not, I think, been properly presented before this Court as to whether or not that was a covered claim under the arbitration agreement. Dillard's argument, Your Honor, not one that I would necessarily personally endorse or recommend to this Court so that I didn't have to address these issues here, but in any event, Dillard's argument is that no party can be made to arbitrate a claim that it hasn't agreed to arbitrate. So Dillard's position in response to that, which is a well-established principle of arbitration law, Dillard's response to that particular claim that was presented was that that claim was not one that they agreed to arbitrate. Isn't that something which the arbitrator should decide, whether the claim is outside of the agreement to arbitrate?  I think the entire merits of this appeal, including the threshold issues, are ones that the arbitrator should decide. I mean, the proper way for Dillard's to have acted would be to deny the claim by Ms. Brown and say the claim you're making is outside of her agreement to arbitrate and seek an arbitration decision at that time in his favor. Your Honor, certainly the preferred way for Dillard's to have acted was to do that. The question before this Court. They could repudiate the contract and say we don't like you, so we're just not going to arbitrate. Your Honor, the question before this Court is whether that constitutes a breach, possibly, or whether that constitutes a waiver. Right. I would submit that those are courts, those are issues the district court did not reach. They're issues for the arbitrator to reach. And in any event, that the record before the Court here does not support a finding on those issues. The arbitrator has to decide whether there's been a waiver of arbitration. It's not putting the cart before the horse. Well, our brief starts with the threshold argument. I don't want to try to switch gears on the Court unless the Court is inviting me to. But the thrust of the initial argument that we make in our brief is that we have a clear and unmistakable agreement of the parties that all issues arising under this agreement are to be arbitrated. And that would include the waiver issue, in our view. And it would under any of the principles of what is or is not a threshold issue. Those waiver issues are central to an issue that goes to the arbitrator as opposed to the Court. The Court's supposed to decide is there an agreement or is there not an agreement, and is it covered, and then move on from that and decide issues about defenses to the agreement, which waiver and breach or repudiation are defenses. The practical consequence of your position, though, it seems to me, is that someone presents a claim that either is or is not arbitrable, but this seems to be a claim that arises out of the employment relationship. The claim is I was fired unjustifiably. She seeks to arbitrate it. You can say, no, I'm not going to arbitrate. You can blow off the claim, and a lot of small claimants may go away. If it turns out that the plaintiff is angry enough, has enough resources or whatever to file a lawsuit, then you can invoke the arbitration clause that you refused previously to honor. I mean, that's the practical consequence, I think, in a fair number of these cases. Isn't that right? I actually don't know what the actual consequences are. That's not the consequence of what happened here. The appellee did pursue her claims, did place it. We think there was no prejudice that resulted from the fact that there was any putative waiver here. No prejudice? Are you going to repay her attorney fees and everything associated with filing in the Federal Court? I don't think you are. I doubt it. Those exact same claims would have had to be incurred had she filed an arbitration demand. No, they cannot possibly be. You're not saying that it's going to cost her no more because you made her start out in the Federal Court and now we're going back to the arbitration. Or are you – this can't be an offer to reimburse her for the extra costs, for the extra step. Is it? No, Your Honor, it is not. It's not. The District Court has expressly addressed the time issue, Your Honor, in granting Dillard's motion to stay the underlying action during the pendency of this appeal. The District Court did find, and we submitted in our supplemental excerpts at page 115, that the plaintiff, that is Ms. Brown, the appellee, was responsible for the delay, both in the time that it took to between July or October of 2002 and April of 2003 when she finally brought her claim, that she was responsible for that delay. I'm sorry, the District Court did not find that. That's one of the delays that Dillard's contends that she was responsible for. The Court then found that there was further delay with respect to after denying Dillard's motion to compel arbitration, there was, I believe, a period of five months, and the District Court's order expressly states the period, in which the plaintiff did not propound any discovery. The prejudice she claims both on this appeal and below on that motion to stay was that she was delayed, that time was wasted, that witnesses were going to evaporate, et cetera, et cetera. All those arguments with respect to delay and discovery were rejected by the District Court already in this case. I'm talking about the delay which is inherent in not proceeding to a timely, efficient, and short arbitration and requiring the plaintiff, in order to vindicate her rights, to sue in the Federal District Court. That is time which she will never be given back. Your Honor, granted. But, again, the standard of prejudice has to be substantial. There's a heavy burden of proof here. There are other cases where there's been both time delays and extra costs incurred, in which the court did not find sufficient prejudice. The United Computer case, late communications, we cited two cases that I think are particularly on point from the Second Circuit, not from this court, the PPG Industries case and the Ledertex case. I can't sit here and say that she was not delayed one bit or that she didn't spend an extra dime or dollar or more than that. The point is that the legal standard is much higher than that. There's a strong prejudice against finding prejudice under these circumstances. Well, short of a waiver, it seems like there's a pretty good argument that Dillard was at least in breach of that clause, and maybe the cure for the breach is not a finding of waiver, but what about damages? That would be the remedy. In fact, she has a claim in her complaint about Dillard's approach to its arbitration program. So there is a remedy within her complaint to recover under those issues. That claim could be adjudicated by the arbitrator, and she can recover damages. It's our view that that is the proper remedy. Can a breaching party sue to enforce the contract that the party has breached? We think in the case of an arbitration agreement it can. Is there a law outside of arbitration that allows a breaching party to sue the contract that the breaching party has breached? Well, yes. I believe, Your Honor, that the issue then goes to the materiality of the breach. I'm assuming, for the purposes of my question, a material breach. Right. I think the other issue that it goes to is the severability, which is what comes up with the separability and the severability, which is what comes up in the arbitration context. You have an agreement to arbitrate disputes under the agreement, and then there's a breach of the agreement. Can that party claim that it has a right to arbitrate, notwithstanding the fact that it's accused of the breach? So it's come up, I think, many times in the arbitration context and outside in the general commercial contract context.  Where it seems to me that it has, it just can't be. But you sense my difficulty. I'm stumbling over the proposition that someone can breach the contract and then later, at its convenience, decide it wishes to enforce the contract it breached. Your Honor, if nothing else, I sense this panel's difficulty with that issue and the issue of waiver. I clearly do. I would submit to the Court, however, that all of those issues are issues for the arbitrator under the first options lines of cases and notwithstanding the grant. Because all of those issues are appropriate issues to be dealt with by the arbitrator. Secondarily, the district court has not reached those issues. The record is not complete with respect to that. There's very little evidence at all with respect to the breach. In fact, this Court does not even have the claim, I believe, I believe this with 99 percent certainty, does not even have the claim that allegedly led to the breach. There's just the allegation that she submitted the claim, which we concede, and there's that Dillard's denied that it was going to arbitrate the claim. But the actual claim itself, what if the claim said, I want a 20-minute break instead of a 10-minute break? How did this question come to us? Did you assume for purposes of your argument the truth of the complaint? No. These issues come to you with respect to the findings of the district court on the issues. And I suppose this Court does have the power to look at other facts in the record to find an alternative basis to uphold the district court's ruling. So that I don't believe that those issues. As to this, it is summary judgment as the rest of it was. I think that's right. Your Honor, I'd like to emphasize that this agreement has met all of the Armendaris factors. Each of the five have been met. This Court's decision in Ingle is completely distinguishable. That's one of the issues the Court found on, the district court found on. The $75 filing fee that was found in the case. Is there a lack of mutuality issue as far as substantive unconscionability? Lack of mutuality is not one of the five factors, Your Honor. But let me skip ahead to that, because I think that's the one issue where Dillard's would concede there's not absolute bilaterality throughout the agreement. The requirement adopted by Armendaris of other courts is that there has to be a modicum, a small amount of bilaterality. I believe there's a modicum here of unilaterality. That if you look at the unilaterality that was found objectionable in all the other cases, that degree, I wish I hadn't adopted this word, of unilaterality, pales in comparison to what we have here. We have a single exclusion that says that Dillard's can't bring a claim, an injunctive relief claim to prevent unfair competition or theft of trade secrets. That's the only thing about this that's unilateral in favor of Dillard's, allegedly. There's no claim here, obviously, involved in this case that that's what happened. But there's also probably very little instance where that kind of claim is going to be brought against the sales associate. I think my client would admit it didn't need that, and that is no longer in its current version of the rules. But putting all that, those issues aside, that level of unilaterality. The most common action by an employer against an employee is a trade secret. That's probably true. I've heard that stated. I think that's generally true. Some courts have stated that. There are others. We've listed in a footnote in our brief several other kinds of claims that employers do bring, and I do bring those on behalf of them so I know them to be the case. But it is true that's the most common claim, not one that's brought here, not one that's likely to have been brought here. But more importantly, compared to the other claims, the other cases which found a lack of bilaterality, all of those cases involved restrictions that applied to all claims. In other words, limitation of remedies on all the employee's claims, a limitation of statute of limitations on all of the plaintiff's claims. Interestingly, in the two cases that found bilaterality not to be a problem, the Fitanti case and the Graham v. Zissertail case, and another case that I'm blanking on at the moment, the courts found that the provision in question was a provision that said, if there's an award of more than $25,000 or some other ceiling amount, then the other party can object. Okay. Why don't we hear from the other side, and then we'll hear from you in response. Thank you. Yeah. Good morning, Your Honors. My name is Lisa Jordan, and I'm here for the appellee, Stephanie Brown. Okay. Since the court asked us to be briefed on the Negraffa case, I'd like to start there. At this time, the Negraffa case dealt with the issue of whether or not the court or the arbitrator should decide whether an arbitration clause is unconscionable. In Negraffa, I think it supports our case because the court made a distinction between a stand-alone arbitration agreement and an employment contract which had an arbitration clause. In this case, the agreement that is at issue is a stand-alone agreement. Every term is about the rules of arbitration. That's the only issue that that agreement covered. And was it presented to Ms. Brown separately from the original employment contract? There was no employment contract. I see. That's to say she was simply hired but without a written contract. Yes. And the arbitration agreement was presented to her separately from the decision or the oral contract to hire? Right. Approximately three months after she was hired, she was called in with her sales associates and presented with the agreement. They had about five minutes to look at it, and they signed an acknowledgment of receipt of the agreement. Okay. So in your view, it comes within, I guess it's footnote four of the Negraffa decision where the Negraffa court notes, for example, the Circuit City arbitration clauses that are freestanding. Yes, exactly. Ms. Jordan, we've had so much talk about waiver a moment ago. Why didn't your client, Ms. Brown, waive any attacks on the unconscionability of the stand-alone arbitration agreement by initiating arbitration herself in the AAA? Well, she attempted to. . . When she contacted AAA, they informed her that Dillard was not going to pay the fee and participate. But she was willing to, and she paid the fee. Yes. Which was then given back to her. That's correct. And did she have counsel at the time? No, she did not. All right. And AAA said that there was nothing that they could do to force Dillard to participate. They didn't have a procedure in which to do it alone. No, I understand that. But by initiating the action herself at AAA, isn't that, if we go back to actions speak louder than words, doesn't that mean that she's accepting the terms of the arbitration agreement? That she's suing under the arbitration agreement. Now she doesn't want it. Now she's got you in your federal court. But then she was suing under the arbitration agreement. Okay. At the time, you know, she's an unsophisticated business person. When she was fired wrongfully by Dillard, she called the Dillards to find out what the options were. They told her about the Fairness in Action Program. They faxed her a copy. And at that time . . . It's called the Fairness in Action Program? Yes, it's . . . Okay. Yes, exactly. So when she got it, she thought that this is the way she had to proceed. So she followed all of the steps in the arbitration agreement or the guidelines. Everything that she was required to do, file a notice of intent to arbitrate. And then she gave a statement of what she thought her claim was. She paid the fee. And she sent it to AAA. And she sent a copy to Dillards. According to the rules, that was supposed to initiate the arbitration process. When Dillards refused to participate, she contacted their legal offices. And at that time, they told her that she had no claim. They would not arbitrate. She could not arbitrate anything. She had no rights. She should just go home and leave them alone. At that time, she thought that there was no further options for what she could do. She assumed that the legal department knew the law and that they were correct in saying that she could not file the arbitration without their cooperation. And then AAA also said that there wasn't anything they could do for her. I believe that's my question. While we're on that original subject, is the original claim request for arbitration that she submitted in the record before this court? Yes, I believe so. In the Apelli's excerpts of record, on page 17, there's a demand for arbitration that she filled out. That was the one that was submitted through the arbitration, the AAA? Yes. She submitted this along with a written, a more detailed statement of what exactly occurred. There was a one-page statement of facts along with it. Now, I'm on page 17. Oh, it's ER, page 17? Yes. I'm sorry. And where on that page am I finding what she submitted for arbitration? Okay. On the pages, there's demand for arbitration, the nature of the dispute. He says I was wrong. Oh, I may be on the wrong excerpts here. Hang on a second. I'm sorry. Oh, I see it. Okay. American Arbitration Employment Rules. I was wrongfully terminated. I'm sorry. I was in the wrong volume. I'm with you. Your one other question, while I have you diverted from your chosen path here. Your opponents ask if your client didn't waive the tax on the arbitration provision by seeking to arbitrate. And that's my statement of what your opponent said. As far as you remember, was this issue ever raised by Dillard's in the district court, the issue that your client waived an attack on the arbitration provision by seeking arbitration? I don't recall them making a waiver issue. They did stress several times that she conceded that an arbitration agreement existed, which we later disputed. She admitted to signing the acknowledgment of receipt, but there was a dispute of whether the rules actually encompassed a valid agreement between the parties. But, yes. But just for the record, the demand for arbitration contained a second page with a detailed description of what happened. But that was sent to Dillard's and the arbitration committee. It just is not in this section. Is it in the record as a whole or just not in the excerpts? I don't think it's in the excerpts. Okay. I know we can find out if it's in the record as a whole. Okay. Thank you. Yes. So she was working under the assumption when she filed the arbitration demand that the agreement was enforceable and this is what she had to do in order to have her claim heard. But going back to the grandpa, then basically I think it supports her claim that footnote four, it's a standalone agreement that it's perfectly within the trial court's authority to make a decision about the unconscionability of the agreement. Once the court looked at the issue of whether there was an actual agreement, they considered the contract to be a contract of adhesion because it was presented to her on a take-it-or-leave-it basis. She had no time to study it and it was her understanding that she would be fired if she didn't sign the agreement at the time. There are two types of unconscionability, procedural and substantive. And what the lower court found was that parties had conceded that there was procedural unconscionability. Everyone agreed that the agreement was contingent on her employment. There was some dispute on whether it was substantively unconscionable. And there were several factors that they looked at and that I would like to present to the court because the major issue that the agreement demonstrates and Dillard's behavior illustrates is that it was unilateral and unfair in the manner in which the parties' rights were determined. For example, in the rules of arbitration, there are several deadlines and guidelines for Ms. Brown to follow in order to have a valid claim. It clearly states that if you don't do this, then your claim is invalid and will be rejected. If you don't do this, you will not have the right to have your claim heard. There is no such similar language giving Dillard's any deadlines. There is one statement in the Fairness and Action Guide which basically says that Dillard's will be able to, once a demand is made, Dillard's will follow up in the legal time frame. It doesn't give a time, a date, or how they have to act. And there are no negative consequences if they don't act. So basically there's nothing Dillard is obligated to do under the agreement, but she is obligated to take a series of steps in order to make sure that her rights are vindicated. Similarly, there were several claims that Dillard's could bring, but that she couldn't bring. She talks about an exception for unfair competition, that they carved out an exception for Dillard's that they wouldn't have to arbitrate those claims. But Ms. Brown has made 1,700 claims about unfair competition, and they argue that those have to be arbitrated before AAA. There are questions of whether or not the fee is sufficient or if it's problematic. Although it's only $100, he says, as opposed to the $200 fee that she did indeed pay for the civil court, the fact that she had to pay it at all to do it is problematic. And the fact that there was no corresponding right for Dillard's to take action makes it a problem for her. And then he simply says, well, it's only a small amount, and the efficiency of arbitration and how fast and speedy it is will save her time and money. But the fact is that because he did not answer the demand, she was forced to spend more money either to do a motion to compel arbitration or to file a lawsuit. So those are costs that she has expended that are rather hidden costs because to simply say she paid the $100 when in fact she incurred all of these other charges is unfair and uncomfortable. And there's no guarantee since AAA had no power to compel Dillard's to do anything. She faces in the future that if they refuse to pay any fees or participate, AAA rules say that if you fail to make the payment, then they have two options. They can come before both parties and demand payment, which would put pressure on her to have to come up with thousands of dollars if she wants to proceed forward with her case. Or they can just suspend the hearing and do nothing, which will force her to come back to court. And one final point on the grandpa is that the fact that the lower court has already looked at the decision and made a decision on the threshold issue of whether or not the agreement is valid or unconscionable, you would save no time if you sent it back to an arbitrator to make that decision. The whole point of the grandpa, one of the main points of the grandpa was the fact that they wanted to ensure fast and speedy arbitrations to make sure that you can serve time and money. And the fact that in this case, she's already had a decision on that. We would just be duplicating efforts and wasting the court's resources and the arbitrator's resources. And that's basically my point, unless you have any other questions for me. I think not. Thank you very much. And I think the other side has saved just a little time. As my time is brief, Your Honor, I just want to try to make two closing points. The first is there's a lot of allegations in the record and otherwise on what I call post-contractual conduct. We think the Angola case before the California Supreme Court and allegations of one-sidedness and lack of neutrality in the operation of Permanente Medical's arbitration agreement clearly resolves that issue. That's not an appropriate consideration for unconscionability. Whatever emotional content it may have had, apparently for the district court or for this court, that's not an appropriate factor in terms of unconscionability there. The second is really throwing a wrench into things I know, but struggling with NAGRAMPA. I think NAGRAMPA fails to reach an issue because it did not have to reach the issue with respect to the difference between the determination of a making of a contract, the determination that Section 4 of the FAA requires, and the determination of unconscionability. California law, which governs the determination of both the formation of contracts, their validity, and the enforceability, makes very clear that those are actually distinct determinations. The making of a contract is different from whether or not it's unconscionable or valid. I'm just going to read from a particular provision of Intershop. Before you do that, because you're over your time already, I want to ask you the same question I asked your opponent, whether you, on behalf of Dillard's, raised in the district court the argument that Ms. Brown waived the attacks on the arbitration clause by initiating or trying to initiate the arbitration at the start. We argue that she waived it with respect to whether there is or is not an agreement, which is actually curiously connected to my point here, that that's a different issue than whether or not it's unconscionable. Dillard's would be a hypocrite if it argued that the arbitrator should decide issues of unconscionability and argue that merely by filing with the arbitrator, the appellee somehow waived issues of unconscionability. She can file that arbitration demand and raise those issues. So the short answer is no? The short answer is yes and no. Yes, she waived it with respect to the making of the agreement. We did argue that. No, she did not waive it, and we didn't argue that she waived it with respect to the unconscionability argument. Okay. Okay. Good. Thank you, Your Honor. Thank you very much. Thank you both sides for a helpful argument. The case of Brown v. Dillard's Department Store and Dillard's Inc. is now submitted for decision. That concludes our oral argument calendar for this morning, and we will resume tomorrow at 9 o'clock. Thank you. All rise. This court for this session is adjourned. Thank you.
judges: T.G. Nelson, W. Fletcher, Bea